UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

00-20651

_____

BRAD ALAN MATHES,

Plaintiff-Appellee,

v.

HARRIS COUNTY, TEXAS,

Defendant-Appellant.

_____

Appeal from the United States District Court for the
Southern District of Texas
(H-98-CV-4351)

_____

January 17, 2002

Before JOLLY, SMITH, and BENAVIDES, Circuit Judges.

PER CURIAM:[*]

Harris County, Texas, appeals a summary judgment in favor of its employee, Brad Mathes,

on his claims of employment discrimination in violation of the Americans with Disabilities Act

("ADA") and the Fourteenth Amendment.  We reverse and render judgment for the county.

---

[*] Pursuant to Local Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in Local Rule 47.5.4.

I.    FACTUAL AND PROCEDURAL HISTORY

Mathes was born without a normal left hand: It extends two inches past his wrist and has several "fingers," the longest of which is one-quarter inch.  Despite this limitation, Mathes is able to lift, play the piano, climb up and down ladders, work with computers, landscape and garden, work as a warehouseman moving furniture, swing a softball bat, throw and catch a softball, and play soccer and football.  He cannot, however, grasp and hold with his left hand.

In 1992, Mathes was hired as a civilian "911" operator in the communications division of the Harris County Sheriff's Department ("HCSD").  The division has one lieutenant, two sergeants, ten deputies, and 109 civilian communication officers.  Only licensed peace officers may serve as supervisors.

In 1993, Mathes successfully completed his telecommunications officer training and was transferred to a HCSD line call-taker position. He handled calls transferred from 911 operators involving law enforcement emergencies.  In 1997, he requested and received a transfer to a jailer position so that he could attend HCSD's academy.  Cadets who successfully completed academy training were allowed to take a written exam administered by the Texas Commission on Law Enforcement Officer Standards and Education ("TCLEOSE"); those who passed were made licensed peace officers.

In January 1998, Mathes began the nineteen-week academy class training.  Before attending the academy, he successfully navigated the required physical agility course, which consisted of jumping over a hurdle, climbing through a window, climbing a six-foot wall, running through pylons, running through a crowd, crawling through a culvert, walking a balance beam, going across monkey bars, climbing a twelve-foot ladder, dragging a log, and running one-half mile.

Mathes was successful for the first nine or ten weeks of classroom instruction; his difficulties began when the course shifted to suspect and weapons control. After failing several exercises, he was dismissed from the academy and returned to his communications officer position.

In July 1998, Mathes filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). He alleged:

> I have been employed as a Communications Officer (Civilian) since April of 1992. In December of 1997, I passed the physical entrance exams to participate in the Sheriff's Department Academy. The course started on January 26, 1998. It was a 19 week course and I was let go the 16th week. During the course, I performed each activity that was required of me to perform. I was told by Sergeant Ronald Young that I did not meet the standards set by The Texas Commission on Law Enforcement Officers Standards and Education (TCLEOSE).
>
> I believe that I have been discriminated against because of disability, as defined by, and covered under, the Americans with Disabilities Act (ADA).

The EEOC issued Mathes a right to sue letter, and he sued, repeating the allegations in his EEOC charge and complaining that:

> to be considered for a supervisor's position, even a position that does not require exposure to the criminal population, Mr. Mathes must complete the academy training. Because of the stance Defendant has taken, Plaintiff Mathes will never be provided with that opportunity, although he qualifies for it.

Mathes requested backpay, compensatory and punitive damages, declaratory and injunctive relief, and an order placing him "into the position he would have obtained had he been permitted to finish his training."

The county moved for summary judgment. The court ordered Mathes, too, to file a motion for summary judgment; when he failed to comply, the court indefinitely postponed a scheduled hearing to await his motion. Finally, Mathes filed a cross-motion for summary judgement in which

3

he augmented his allegations, stating that "the reasons offered by Defendant for not promoting Plaintiff Mathes are not legitimate, non-discriminatory reasons."

The court granted Mathes's summary judgment motion and denied the county's, holding the county liable for failing to waive its certification requirement and promote Mathes. Even though Mathes has never arguedSSin his complaint, in his motion for summary judgement, or in his appellate brief for that matterSSthat the county denied him equal protection of the laws under the Fourteenth Amendment, the district court raised and decided the issue *sua sponte* in his favor. In a separate order, the court enjoined the county and TCLEOSE (a non-party to the suit) by requiring them to allow Mathes to take the TCLEOSE examination. The court also awarded Mathes backpay and attorney's fees.

II.     ANALYSIS

The county asserts that the district court erred in entertaining Mathes's failure to promote claim, because Mathes failed to exhaust his EEOC remedies for this charge. "[A]n employee must comply with the ADA's administrative prerequisites prior to commencing an action in federal court . . . ." *Dao v. Auchan Hypermarket*, 96 F.3d 787, 789 (5th Cir. 1996) (per curiam). "The ADA incorporates by reference the procedures applicable to actions under Title VII, 42 U.S.C. § 2000e, *et seq.*," including the requirement that a plaintiff "file a timely charge with the EEOC." *Id.*

The ADA provides that:

The powers, remedies, and procedures set forth in sections 2000e-4, 2000e-5, 2000e-6, and 2000e-9 of this title shall be the powers, remedies, and procedures this subchapter provides to the Commission, to the Attorney General, or to any person alleging discrimination on the basis of disability in violation of any provision of this subchapter.

42 U.S.C. § 12117(a).  Section 2000e-5(e)(1) provides, in turn, that before a plaintiff can sue, he must file a timely charge with either the EEOC or an equivalent state or local agency.  The county concedes that Mathes filed a timely EEOC charge, but it argues that Mathes's charge did not allege that the county failed to promote him, and thus he could not argue this claim in the district court.

This circuit has not defined the scope of the ADA's administrative exhaustion requirement. Because the ADA has explicitly adopted title VII's administrative exhaustion procedures, it is clear that our standards for title VII apply to the ADA as well.

We have adopted "a rule of reason which permits the scope of a Title VII suit to extend as far as, but no further than, the scope of the EEOC investigation which could reasonably grow out of the administrative charge."[1]  On the one hand, "this rule protects unlettered lay persons making complaints without legal training or the assistance of counsel."  *Fine*, 995 F.2d at 578.  On the other hand, it furthers the act's "goal of encouraging voluntary compliance through EEOC conciliation." *Terrell*, 644 F.2d at 1123.

As previously set forth, Mathes's EEOC complaint alleged a violation of the ADA based on his dismissal from the HCSD academy.  It did not address the issue of inability to be promoted in the communications division resulting from the dismissal.  Indeed, there apparently were no supervisory positions available during the relevant time frame, and Mathes admits that he has never applied for such a position.[2]  We are constrained to hold that, based on this complaint, the scope of the EEOC

---

[1] *Terrell v. U.S. Pipe & Foundry Co.*, 644 F.2d 1112, 1123 (5th Cir. Unit B May 1981), *vacated on other grounds sub nom. Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO v. Terrell*, 456 U.S. 955 (1982); *accord Fine v. GAF Chem. Corp.*, 995 F.2d 576, 578 (5th Cir. 1993); *Fellows v. Universal Rests., Inc.*, 701 F.2d 447, 450 (5th Cir. 1983).

[2] In its opinion on liability, the district court stated that "Mathes has asked the county to waive the certification requirement and consider him for a promotion."  We are at a loss to determine what evidence the

investigation could not reasonably be expected to encompass an allegation of failure to promote. - Under these circumstances, the failure to promote claim remains unexhausted, and we must reverse and render the judgment based on Mathes's failure to promote claim.

Mathes did, however, exhaust his claim that the county discriminated against him by discharging him from the academy. We understand this claim to be derivative of or underlying his failure to promote claim. In other words, to qualify for a supervisory position, he needed to be certified as a peace officer, which required successful completion of the police academy.[3] To the extent that his challenge to his dismissal from the academy is a separate and independent claim of discrimination, Mathes essentially concedes that he cannot be a fully functioning peace officer.[4] Indeed, Mathes states that "[a]t no time did Mathes seek to be a certified law enforcement officer in the more traditional aspects of the job." Accordingly, we reverse the summary judgment for Mathes and render summary judgment for the county on Mathes's ADA claims.

Finally, Mathes has never arguedSSin his complaint, in his motion for summary judgment, or in his appellate briefSSthat the county denied him equal protection of the laws under the Fourteenth Amendment. Nor did the county ever raise it; the district court did so entirely on its own.

Rule 8, FED. R. CIV. P., does "not require an inordinate amount of detail or precision," *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 434 (5th Cir. 2000), just a "short and plain

---

district court relied upon in making this statement.

[3] In Mathes's words: "Because he was dismissed from the Academy, he would be unable to get certified through TCLEOSE. If he could not get certified then he certainly was not going to get promoted into a supervisory position in the area that was central to his career[,] the Communications Division of the Harris County Sheriff's Department."

[4] In his brief, Mathes admits that: "Arguably, [the county] could very well not promote him into a patrol officer position because Appellee, at least at this juncture, is probably not qualified to be a patrol officer, or function in a position that requires the more traditional duties of a law enforcement officer."

statement of the claim showing that the pleader is entitled to relief." "The function of a complaint is to give the defendant fair notice of the plaintiff's claim and the grounds upon which the plaintiff relies." *Id.* at 434. "The form of the complaint is not significant if it alleges facts upon which relief can be granted." *Id.* (internal quotation marks and citation omitted).

Mathes made no allegations that conceivably could form the basis of a Fourteenth Amendment claim. He never alleged he had been treated unequally or differently from the other cadets. In fact, he has stated that he was not dealt with unfairly and was treated the same as every other cadet. Harris County had no notice equal protection would be an issue. Even given the generous standards of rule 8, the judgment cannot stand.

Rule 56, FED. R. CIV. P., provides a second, independent ground for reversal. "The district court may grant summary judgment sua sponte if the parties are provided with reasonable notice and an opportunity to present argument opposing the judgment." *St. Paul Mercury*, 224 F.3d at 435. A party must be given ten days notice before the court grants judgment. FED. R. CIV. P. 56(c); *St. Paul Mercury*, 224 F.3d at 435. The district court indisputably violated this rule, providing no notice to either party.

The summary judgment is not automatically reversed, however; we apply a harmless error standard. FED. R. CIV. P. 61; *St. Paul Mercury*, 224 F.3d at 435. Here, the error certainly was not harmless: Mathes's own statements negate a finding that he was denied equal protection. Given notice, the county surely would have produced this dispositive evidence. The equal protection ruling cannot stand.

The judgment is REVERSED, and judgment is RENDERED in favor of the county.

7