

# NUMBER 13-20-00305-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

PHARR-SAN JUAN-ALAMO
INDEPENDENT SCHOOL DISTRICT,                               Appellant,

v.

MELBA LOZANO,                                             Appellee.

On appeal from the 92nd District Court
of Hidalgo County, Texas.

# MEMORANDUM OPINION

**Before Justices Benavides, Longoria, and Tijerina**
**Memorandum Opinion by Justice Benavides**

Appellant Pharr-San Juan-Alamo Independent School District (School District)

appeals from the denial of its motion for summary judgment on appellee Melba Lozano's

employment discrimination claim alleging constructive discharge based on disability. *See*

TEX. LAB. CODE ANN. § 21.051(1). By its first issue, the School District argues that (1) Lozano's claim is necessarily limited by the allegations contained in her charge of discrimination filed with the Texas Workforce Commission (TWC), and (2) those allegations are insufficient as a matter of law to establish a claim for constructive discharge. By its second issue, the School District argues that Lozano's failure to make her charge under oath is a jurisdictional bar to her claim. We affirm.

## I. BACKGROUND

This is the second interlocutory appeal we have considered in this case. *See Pharr-San Juan-Alamo Indep. Sch. Dist. v. Lozano*, No. 13-16-00408-CV, 2018 WL 655527, at *4 (Tex. App.—Corpus Christi–Edinburg Jan. 31, 2018, pet. denied) (mem. op.) ("*PSJA I*"). As detailed in *PSJA I*, the genesis of Lozano's discrimination claim was her demotion from high school principal to middle school assistant principal following the 2013-2014 school year. *Id.* at *1. The parties dispute the reason for Lozano's demotion.

According to Lozano, her demotion was motivated by the possibility that her cancer had returned. Lozano was originally diagnosed with cancer during the 2012-2013 school year, and she missed part of the 2013 spring semester undergoing treatment. *Id.* The following school year, Lozano's physician told her that her cells were "abnormal," implying that her cancer had returned. *Id.* Lozano claims she shared this news with the assistant superintendent, and afterwards, the School District began unfairly scrutinizing her job performance. *Id.* At the conclusion of the 2013-2014 school year, the superintendent informed Lozano that she was being reassigned to serve as an assistant principal at a middle school for the upcoming school year. *Id.* During this conversation, the

2

superintendent allegedly told Lozano that she was being removed because "he needed a principal on campus" and Lozano had taken too much sick leave in the past.

The School District says it demoted Lozano based strictly on her job performance. The summary judgment record shows that Lozano's high school was not meeting state accountability measures and that Lozano received several reprimands during her tenure as principal. Lozano counters that other principles in similar situations were not demoted and that her reprimands were largely pretextual.

Just prior to her demotion, Lozano accepted a "Two Year Certified Administrator Term Contract" for the 2014-2015 and 2015-2016 school years from the School District. The contract contains the following provision: "[Lozano] understands that the [School] District has the right to assign or reassign [Lozano] to positions, duties, or additional duties and to make changes in responsibilities, work, or transfers, at any time during this contract." At the time Lozano was demoted, the School District informed her that she would maintain her pay grade for the upcoming 2014-2015 school year but that her pay for the 2015-2016 school year would be based on her work assignment at that time. Thus, if she remained in the position of middle school assistant principal for the 2015-2016 school year, her pay would decrease in accordance with her position.

Shortly after receiving notice of her reassignment, Lozano filed an internal grievance with the School District alleging that her demotion was based on disability discrimination and requesting that she be reinstated as a principal for the 2015-2016 school year so that she would not realize a pay reduction. The internal grievance process had three levels, and Lozano's request was denied at each level.

3

Lozano accepted her reassignment and served as an assistant middle school principal during the 2014-2015 school year. *Id.* According to Lozano, her working conditions did not improve. Lozano alleges that the School District continued to unfairly scrutinize her job performance, and she felt like the School District was "waiting for [her] to make a mistake" so that it could terminate her. During her deposition, Lozano described an incident where she believes the superintendent intentionally embarrassed her in front of parents and other administrators. She also described an incident where she felt like a supervisor was trying to "intimidate" her. At the conclusion of the 2014-2015 school year, Lozano resigned. On the resignation form she submitted to the School District, Lozano stated the reason for her resignation was "[d]iscrimination due to illness (demotion)."

Approximately six months prior to her resignation, Lozano filed a charge of discrimination with the TWC alleging that she was demoted based on her disability. *Id.* Shortly after her resignation, Lozano filed a second charge of discrimination, alleging as follows:

> I was constructively discharged from [the School District] in that I was not offered a principal contract. My discharge was motivated by unlawful disability discrimination. I am a cancer survivor who missed work for routine monitoring and treatment, including continuous visits to M.D. Anderson. I feel [the School District's] refus[al] to extend a principal contract was also retaliation for missing work as a result of my cancer treatment.

*Id.* at *2.

The TWC dismissed both of Lozano's charges, and she filed suit. *Id.* After the trial court denied the School District's plea to the jurisdiction, we concluded in *PSJA I* that Lozano's first charge, filed more than six months after her demotion, was untimely and could not otherwise be saved by the continuing violation doctrine. *Id.* at *4. Accordingly,

4

we rendered a judgment dismissing that claim for want of jurisdiction. *Id.* at *6.

Conversely, we determined that the trial court had subject matter jurisdiction over Lozano's constructive discharge claim. *Id.* In doing so, we held that the second charge was timely filed with the TWC, Lozano's failure to make the second charge under oath was not a jurisdictional bar, and Lozano had presented a prima facie case of constructive discharge. *Id.* at *4, 5. Finally, drawing on United States Supreme Court precedent discussing the permissible scope of hostile work environment claims and other federal precedent "recognizing the similarity between a hostile environment and a constructive discharge," we rejected the School District's argument that "Lozano cannot rely on the otherwise time-barred discrete act of her 2014 demotion to support her constructive discharge claim." *Id.* at *6 (citing *Nat'l R.R. Passenger Corp, v. Morgan*, 536 U.S. 101, 119 (2002); *Univ. of Tex. M.D. Anderson Cancer Ctr.*, 54 Fed. Appx. 404 n.4 (5th Cir. 2002)).

On remand, the School District filed a combined traditional and no-evidence motion for summary judgment, raising a new argument for limiting the scope of Lozano's constructive discharge claim and contending that such claim could not support a constructive discharge as a matter of law. The School District also reasserted its argument that Lozano's failure to make the second charge under oath constitutes a jurisdictional bar to her claim. The trial court denied the motion, and this interlocutory appeal ensued.[1]

---

[1] The School District made additional arguments in its motion for summary judgment that it has not asked us to review on appeal.

## II.     STANDARD OF REVIEW & APPLICABLE LAW

Subject matter jurisdiction is essential to a court's authority to decide a case. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000) (citing *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443 (Tex. 1993)). Whether a trial court has subject matter jurisdiction is a question of law we review de novo. *State Dep't of Highways & Pub. Transp. v. Gonzalez*, 82 S.W.3d 322, 327 (Tex. 2002). A plaintiff must plead facts that affirmatively demonstrate the trial court's subject matter jurisdiction. *Fleming v. Patterson*, 310 S.W.3d 65, 68 (Tex. App.—Corpus Christi–Edinburg 2010, pet. struck) (citing *Tex. Air Control Bd.*, 852 S.W.2d at 446).

Governmental immunity from suit protects political subdivisions of the State like the School District from lawsuits for money damages and deprives a trial court of subject matter jurisdiction over the plaintiff's claims. *See Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 655 & n.2 (Tex. 2008). To prevail on a claim of immunity, the governmental defendant "may challenge the pleadings, the existence of jurisdictional facts, or both." *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 770 (Tex. 2018). When a defendant challenges the existence of jurisdictional facts, the analysis "mirrors that of a traditional summary judgment." *Tex. Dep't of Transp. v. Lara*, 625 S.W.3d 46, 52 (Tex. 2021) (quoting *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 634 (Tex. 2012)).

The Texas Commission on Human Rights Act (TCHRA) prohibits employers from discriminating against employees based on disability. TEX. LAB. CODE ANN. § 21.051(1). Because the TCHRA was modeled after federal statutes, Texas courts are guided by

6

federal precedent interpreting those statutes. *Lara*, 625 S.W.3d at 52 (citing *Garcia*, 372 S.W.3d at 634).

The TCHRA waives a governmental employer's immunity from suit for violations under the act. *Alamo Heights*, 544 S.W.3d at 770. However, a person must first exhaust the TCHRA's administrative remedies prior to filing suit, and failure to do so is a jurisdictional defect that deprives the trial court of subject matter jurisdiction. *City of Waco v. Lopez*, 259 S.W.3d 147, 156 (Tex. 2008). This includes filing a timely charge of discrimination with the TWC. *See* TEX. LABOR CODE ANN. § 21.202; *Lopez*, 259 S.W.3d at 156.

Relatedly, "[a] lawsuit under the [TCHRA] will be limited in scope to only those claims that were included in a timely administrative charge and to factually related claims that could reasonably be expected to grow out of the agency's investigation of the claims stated in the charge." *El Paso County v. Vasquez*, 508 S.W.3d 626, 635 (Tex. App.—El Paso 2016, pet. denied) (citing *City of Sugar Land v. Kaplan*, 449 S.W.3d 577, 581–82 (Tex. App.—Houston [14th Dist.] 2014, no pet.); *Williams–Pyro, Inc. v. Barbour*, 408 S.W.3d 467, 475–76 (Tex. App.—El Paso 2013, pet. denied)). Although a charge should be adequate to put the employer on notice of the existence and nature of the claims against it, courts should construe the charge with "utmost liberality," recognizing, as here, that charges are often written by laypersons. *See Santi v. Univ. of Tex. Health Sci. Ctr. of Hous.*, 312 S.W.3d 800, 805 (Tex. App.—Houston [1st Dist.] 2009, no pet.) (quoting *Bartosh v. Sam Houston State Univ.*, 259 S.W.3d 317, 321 (Tex. App.—Texarkana 2008, pet. denied)); *Preston v. Tex. Dep't of Fam. & Protective Servs.*, 222 F. App'x 353, 356–

7

57 (5th Cir. 2007) (per curiam) (quoting *Price v. Sw. Bell Tel. Co.*, 687 F.2d 74, 78 (5th Cir. 1982)). Thus, in striking the appropriate balance between these two principles, the Fifth Circuit has explained that an employment discrimination suit "may be based, not only upon the specific complaints made by the employee's initial [TWC] charge, but also upon any kind of discrimination like or related to the charge's allegations, limited only by the scope of the [TWC] investigation that could reasonably be expected to grow out of the initial charges of discrimination." *Fellows v. Universal Rests., Inc.*, 701 F.2d 447, 451 (5th Cir. 1983). We construe the initial charge by "look[ing] slightly beyond its four corners, to its substance rather than its label." *Vasquez*, 508 S.W.3d at 634 (quoting *Pacheo v. Mineta*, 448 F.3d 783, 789 (5th Cir. 2006)).

### III.   ANALYSIS

**A.   Our Jurisdiction Over this Appeal**

As a threshold matter, Lozano challenges our jurisdiction over this interlocutory appeal. According to Lozano, our jurisdiction is based solely on the School District's second issue—an argument we previously rejected in *PSJA I*—and its insertion in an otherwise "merits-based" motion for summary judgment was nothing more than "creative procedural maneuvering" by the School District to invoke our interlocutory jurisdiction. *See Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 195 (Tex. 2001) (stating general rule that, absent a statutory exception, appeals may be taken only from final judgments); TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(8) (providing a list of interlocutory orders that may be appealed, including an order that "grants or denies a plea to the jurisdiction by a governmental unit"). Stated differently, Lozano contends that the School District's new

8

argument challenging the merits of her claim does not implicate the trial court's subject matter jurisdiction, and therefore, we should disregard the School District's recycled second issue and dismiss the appeal for want of jurisdiction. As discussed below, we will not revisit our holding in *PSJA I*; however, our jurisdiction over this interlocutory appeal exists independently of the School District's second issue.

"Because a statutory violation is necessary to establish an immunity waiver [under the TCHRA], jurisdiction and the merits intertwine." *Alamo Heights*, 544 S.W.3d at 783 (citing *Garcia*, 372 S.W.3d at 635–36). In other words, "the elements of the violation are jurisdictional facts" that may be challenged in a plea to the jurisdiction *or* a motion for summary judgment. *See id.* at 784; *Bland*, 34 S.W.3d at 554 ("The absence of subject-matter jurisdiction may be raised by a plea to the jurisdiction, as well as by other procedural vehicles, such as a motion for summary judgment."). In fact, a plaintiff's failure to prove an element of their claim at any point in the proceeding, even at trial, deprives the trial court of jurisdiction. *Alamo Heights*, 544 S.W.3d at 785.

Consequently, we have jurisdiction over the trial court's order denying the School District's "merits-based" motion for summary judgment. *See id.*; *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(8). We deny Lozano's request to dismiss the appeal.

## B. The Scope of Actionable Conduct

By its first issue, the School District argues that Lozano's constructive discharge claim should be limited to the factual allegation in her charge that she was "not offered a principal contract." The School District characterizes this allegation as a mere "failure-to-promote" that cannot support a constructive discharge claim. Because she failed to

specifically mention her demotion in the second charge, the School District argues that this discrete act should be siloed from Lozano's constructive discharge claim, and without it, the remainder of her claim fails as a matter of law. We disagree.

As the School District concedes in its brief, "it is undisputed that [Lozano] did not apply for a promotion to principal." Instead, the summary judgment record establishes that Lozano filed multiple grievances with the School District asking to be *reinstated* to her position as principal *because* she believed her demotion was discriminatory. Additionally, she informed the School District in writing, approximately six weeks before she filed her second charge with the TWC, that the reason for her resignation was "[d]iscrimination due to illness (demotion)." Therefore, Lozano's demotion was "factually related" to her inartful allegation that she was "not offered a principal contract," and we would expect the TWC to investigate the circumstances of Lozano's demotion as part of her constructive discharge claim. *See Vasquez*, 508 S.W.3d at 635; *Fellows*, 701 F.2d at 451. The School District has not provided any record of the TWC's investigation to demonstrate otherwise.[2] *See Sw. Convenience Stores, LLC v. Mora*, 560 S.W.3d 392, 402 (Tex. App.—El Paso 2018, no pet.) ("[I]n this case we need not speculate about the questions that the EEOC asked and the answers given because the investigator's notes are included in the record."). Moreover, unlike some other cases, Lozano has always maintained that she was constructively discharged based on her disability; she did not

---

[2] It is not clear from the record whether the TWC investigated Lozano's separate charges—filed approximately six months apart—together or successively before issuing Lozano a right to sue letter. Regardless, the School District was certainly aware of both charges, as well as Lozano's internal grievances; therefore, it cannot credibly suggest that it was without notice that Lozano considered her demotion discriminatory.

10

change the nature of her complaint when she filed suit. *See id.* (finding that a charge alleging discrimination based on "sex" did not put the employer "on notice of the existence and nature of [plaintiff's] sexual harassment hostile work environment claim as alleged in her petition"); *Harris-Childs v. Medco Health Sols., Inc.*, 169 F. App'x 913, 916 (5th Cir. 2006) (per curiam) (finding that a charge alleging "unfair treatment" and "harassment" did not put the employer on notice that charge was based on racial or sexual discrimination).

Construing Lozano's second charge liberally, as we must, we overrule the School District's first issue.[3]

## C. Verification Requirement is Non-Jurisdictional

By its second issue, the School District asks us to reexamine our holding in *PSJA I* that Lozano's failure to verify her second charge of discrimination was a non-jurisdictional defect. *See* 2018 WL 655527, at \*4 (adopting the holding in *Reid v. SSB Holdings, Inc.*, 506 S.W.3d 140, 143–150 (Tex. App.—Texarkana 2016, pet. denied)); TEX. LABOR CODE ANN. § 21.201(b) ("The complaint must be in writing and made under oath."). Since our memorandum opinion in *PSJA I*, one of our sister courts has reached the opposite conclusion. *See Univ. of Tex. at El Paso v. Isaac*, 568 S.W.3d 175, 182–87 (Tex. App.—El Paso 2019, pet. denied). Without further guidance by the Supreme Court of Texas, we decline to revisit our holding.

## IV. CONCLUSION

We affirm the trial court's judgment.

---

[3] As we discussed in *PSJA I*, through her allegations and evidence, Lozano has presented a prima facie case of constructive discharge. *Pharr-San Juan-Alamo Indep. Sch. Dist. v. Lozano*, No. 13-16-00408-CV, 2018 WL 655527, at \*5 (Tex. App.—Corpus Christi–Edinburg Jan. 31, 2018, pet. denied) (mem. op.).

GINA M. BENAVIDES
Justice

Delivered and filed on the
2nd day of December, 2021.